

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 10, 2019

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Ernest Montevecchi**
                S2 18 Cr. 15 (AKH)

Dear Judge Hellerstein:

      The Government respectfully submits this letter in connection with the sentencing of defendant Ernest Montevecchi, currently scheduled for May 17, 2019. As more fully set forth below, the plea agreement between the parties (the "Plea Agreement") calculated a United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 24 to 30 months' imprisonment (the "Guidelines Range"). The United States Probation Department ("Probation") has come to the same calculation in the Presentence Report ("PSR"). The Government respectfully submits that a sentence within the Guidelines Range is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**Offense Conduct**

      The defendant is a made member of the Genovese Organized Crime Family of La Cosa Nostra, holding the rank of soldier. (PSR ¶ 25). Despite being a member of the Genovese Family, the defendant also participated in the affairs of the Bonanno Organized Crime Family by agreeing to commit crimes with members of the Bonanno Family. In particular, the defendant agreed with George Tropiano, a made member of the Bonanno Family, to extort Steven Grzic, the owner of a construction company in Queens. (PSR ¶ 50). Grzic and his company had won a $1.7 million judgment in a civil lawsuit against a company that was on record with the Genovese Family, and the defendant had Tropiano threaten Grzic to accept less money to settle the lawsuit. (PSR ¶ 50). Thereafter, the Tropiano and Thomas Carrube, another made member of the Bonanno Family, visited Grzic at his office unannounced. (PSR ¶ 51). At the meeting, Tropiano tried to get Grzic to settle the lawsuit for approximately $200,000, and when Grzic refused, the defendant threatened Grzic by telling Grzic to "say hi to his father." (PSR ¶ 51). Grzic interpreted this statement as a threat because his father had been shot in the head outside of his home in an unsolved attempted murder. (PSR ¶ 51). Following this meeting, Tropiano reported his efforts back to the defendant.

Following the initial meeting with Grzic, the defendant and Tropiano continued to harass Grzic concerning the lawsuit by leaving voicemails and a handwritten note for Grzic. (PSR ¶ 52). In the note, the defendant repeated the reference to Grzic's father. (PSR ¶ 52). Fearful for his life, Grzic hired a bodyguard to protect himself and relocated his family out-of-state for a period of time. (PSR ¶ 52).

### The Defendant's Guilty Plea and the PSR

On February 12, 2019, the defendant pleaded guilty, pursuant to the Plea Agreement, to conspiracy to commit racketeering, in violation of Title 18, United States Code, Section 1962(d). (PSR ¶ 12). During his plea allocution, the defendant admitted to working with one of his co-defendants (George Tropiano) to extort a business out of a civil court judgment. Specifically, the defendant admitted to sending Tropiano because he was "more intimidating" than the defendant, and that they wanted to intimidate the victim. The defendant also admitted that as part of the racketeering conspiracy, he and other participants engaged in activities at an illegal dump site on Staten Island, and that one of the purposes of the enterprise was to intimidate others to use the dump site.

Pursuant to the Plea Agreement, the parties stipulated to a base offense level of 19, and a two-level decrease because the defendant was a minor participant in the racketeering conspiracy. (PSR ¶ 13). After a two-level reduction for acceptance of responsibility, the total offense level is 15. (PSR ¶ 13). The parties further stipulated that the defendant had six criminal history points and was in Criminal History Category III. (PSR ¶ 13). Accordingly, the parties stipulated that the Guideline Range was 24 to 30 months' imprisonment. (PSR ¶ 13). In the PSR, Probation has reached the same determination. (PSR ¶¶ 61-76, 121).

### Discussion

*Applicable Law*

Although the Guidelines no longer play a mandatory role at sentencing, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). "Pursuant to the 'remedy opinion' [in *Booker*], the now advisory Guidelines are to be considered together with the other factors set forth in 18 U.S.C. § 3553(a), by judges fashioning sentences." *United States* v. *Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *see also Booker*, 543 U.S. at 261-62. Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id.* at 49. *See also United States* v. *Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) (the Guidelines "'cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges.'" (quoting *United States* v. *Jiminez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (*en banc*))); *see also Fernandez*, 443 F.3d at 33-34 ("It was not error for the [District Court] to employ the Guidelines range as a starting point

and then to determine whether the arguments presented pursuant to the § 3553(a) factors warranted 'lighten[ing]' of . . . or fashioning of 'an alteration to' . . . the advisory Guidelines sentence").

The Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *Fernandez*, 443 F.3d at 27; *see also Kimbrough* v. *United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting *Rita* v. *United States*, 551 U.S. 338, 350-51 (2007))).

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
> (5) any pertinent policy statement [issued by the Sentencing Commission];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

*Application*

In light of the circumstances of the instant offense and the defendant's history, a sentence within the Guidelines Range of 24 to 30 months' imprisonment is appropriate. The 18 U.S.C. § 3553(a) factors particularly relevant here include the need to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).

First, a Guidelines sentence is appropriate to reflect the seriousness of the defendant's conduct and to provide just punishment. As he admitted during his guilty plea allocution, the defendant, a made member of the Genovese Family, participated in the affairs of the Bonanno Family, a criminal organization that engaged in repeated criminal acts including extortion. The defendant was not a passive member. In particular, the defendant sent a member of the Bonanno Family to extort a legitimate business owner who had no ties to organized crime. In doing so, the defendant and his co-conspirator instilled fear in the victim by invoking the violent assault that had been committed against the victim's father. The defendant's conduct also demonstrates the way in which members of the mafia believe they can operate under a set of rules separate from those that govern the rest of society. When a dispute arose relating to one of his construction jobs, Grzic relied on the legal system to recover his damages. But when he was successful, the defendant and the mafia took matters into their own hands by threatening Grzic in order to extort him out of money he was rightly owed in a valid court judgment.

Second, a sentence within the Guidelines Range is necessary to afford adequate specific and general deterrence, and to protect the public from further crimes of the defendant. The defendant is a long-time member of the Genovese Family who has previously been convicted in two federal cases and served significant terms of imprisonment, none of which deterred him. In 1999, the defendant was convicted of conspiracy to commit extortion and conspiracy to commit securities fraud. As set forth in the PSR, the defendant used his position as a soldier in the Genovese Family to supervise the activities of and resolve disputes among members of the Genovese Family. The defendant and others conspired to unlawfully increase the market price for certain securities, and made secret payments to brokers to induce them to sell securities to their customers. For these crimes, the defendant was sentenced to 63 months' imprisonment. (PSR ¶ 73). In 2002, the defendant was convicted of racketeering conspiracy and sentenced to 36 months' imprisonment. As set forth in the PSR, the defendant used his influence as a member of the Genovese Family to assist others in stock fraud, and he was involved in hiring certain individuals and intervening when members had issues involving extortion and threats from outside groups. (PSR ¶ 74). Despite these prior convictions, the defendant continued to engage in serious criminal activity as a member of the Genovese Family. A Guidelines sentence is also necessary to send a message to other individuals who choose to engage in organized crime and commit extortion, which has been a long-time staple of the mafia's criminal activity.

In his sentencing submission, the defendant seeks a significant downward variance to a year and a day in prison, the same recommendation made by Probation.[1] The Government respectfully submits that such a sentence is not sufficient to meet the ends of sentencing, and that the reasons offered by the defendant should be rejected. The defendant first argues that a below-Guidelines sentence is appropriate given his age and health.[2] But the defendant's age did not stop him from

---

[1] The Probation Office also recommends a $7,500 fine, and the Government agrees that a fine within the Guidelines range of $7,500 to $75,000 is appropriate.

[2] With regard to his personal and family circumstances, the defendant appears to be arguing for a downward departure under the Guidelines. (Defs. Sent. Memo. at 8-9). Such an argument would be a violation of the Plea Agreement, which provides that "[t]he parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range . . . is warranted," and that no party will "in any way suggest that the Probation Office or the Court consider such a departure of adjustment under the Guidelines."

4

committing these crimes. In fact, the defendant has continued to be a made member of the Genovese Family into his 70s, and was in his 70s when he and Tropiano conspired to extort Grzic. Accordingly, the defendant is wrong to suggest that the public need not be protected from a man of his age, when he has demonstrated that given his age, he is perfectly willing to send other, more intimidating individuals to carry out his crimes. Moreover, the Bureau of Prisons is capable of meeting the needs of inmates who are elderly and/or suffer from health issues, such as the high blood pressure and heart issues set forth in the defendant's submission.

The defendant also argues that he has complied with pretrial supervision, but that has involved strict monitoring with a GPS bracelet and confinement to his home. But in the past, the defendant has shown that following periods of court supervision (i.e. supervised release), he has continued to engage in organized crime. Next, the defendant argues that he played a minor role. While it is true that the defendant played a minor role in the affairs of the Bonanno Family, of which he was not a member, the defendant was the driving force behind the extortion of Mr. Grzic. As the defendant admitted in his plea allocution, he intentionally selected someone who was more intimidating than the defendant to carry out the extortion.

Finally, the defendant argues that his social security benefits will be suspended during his period of incarceration. Despite that risk, the defendant still engaged in criminal activity, and while he will lose those benefits while incarcerated, the PSR shows that the defendant and his family have a net worth of over $300,000.

## Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines Range of 24 to 30 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/ Jason M. Swergold
Jason M. Swergold
Gina Castellano
Jacob R. Fiddelman
Assistant United States Attorneys
Southern District of New York
(212) 637-1023 / 2224 / 1024

cc: Thomas Harvey, Esq. (via ECF)